## In Re Anonymous No. 3 D.B. 77

Disciplinary Board Docket no. 3 D.B. 77.

To the Honorable Chief Justice and Justices of The Supreme Court of Pennsylvania.

DANIELS, *Member,* September 15, 1982— Pursuant to Rule 218(c)(5) of the Pennsylvania Rules of Disciplinary Enforcement, The Disciplinary Board of the Supreme Court of Pennsylvania

submits its following findings and recommendations to your honorable court with respect to the above petition for reinstatement.

## I. HISTORY OF PROCEEDINGS

On October 7, 1974, the Supreme Court of Pennsylvania suspended petitioner from the practice of law in the Commonwealth of Pennsylvania for a period of five years effective as of October 16, 1974. A petition for reargument and/or a rehearing was denied by the Supreme Court of Pennsylvania on December 27, 1974, with petitioner's suspension becoming effective as of January 1, 1975.

As a result of such suspension, petitioner was also suspended for a period of five years and until further order of the appropriate courts from the Bar of the United States Court of Appeals for the Third Circuit and the Bar of the United States District Court for the Eastern District of Pennsylvania.

The charges of professional misconduct which led to petitioner's suspension arose out of an investigation of unethical solicitation practices by petitioner in the conduct of his law practice. Petitioner was specifically found to have engaged in professional misconduct by reason of improper solicitation of clients, impeding the Special Judicial Investigation into such misconduct, submission of inflated medical claims and filing retainer agreements, which were required to be filed under a local rule of the Court of Common Pleas of [   ] County, containing false information.

The instant petition for reinstatement was filed on July 11, 1980 in the office of the Disciplinary Board of the Supreme Court of Pennsylvania, following the expiration of petitioner's five-year period of suspension. Pursuant to the provisions of

the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania referred the matter to Hearing Committee [　] (hereinafter referred to as "committee"), consisting of [　].

Following appropriate notice, the committee conducted hearings in connection with the instant petition for reinstatement on February 9, 1981 and March 2, 1981. At the conclusion of the hearings, both petitioner and respondent submitted briefs in support of their respective positions and also submitted brief responses to each other's initial briefs. After the submission of briefs, the committee filed a most extensive report, findings and recommendation to this board on February 1, 1982, wherein it was recommended that petitioner's application for reinstatement to the practice of law in the Commonwealth of Pennsylvania be granted.

The Office of Disciplinary Counsel filed a brief on exceptions to said committee's report and recommendation on February 24, 1982, in response to which petitioner filed a brief opposing exceptions.

On May 10, 1982, oral argument was heard before a three-member panel of this board, consisting of Robert C. Daniels, Esq., Chairman, Mary Bell Hammerman, Esq., and John M. Elliott, Esq. That three-member panel made its report and recommendation to the entire board, following which this board, after an extensive and complete review of the entire record in this matter, including the report, findings and recommendation of hearing committee [　], hereby recommends that the instant petition for reinstatement be granted for the reasons set forth hereinafter.

## II. DISCUSSION

In order for petitioner to gain reinstatement to the

Bar of the Supreme Court of Pennsylvania, he has the burden of demonstrating, by clear and convincing evidence, that he has both the moral qualifications and the competency and learning in the law required for admission to practice in this Commonwealth. In addition, he has the burden of demonstrating that his resumption of the practice of law will not be detrimental to the integrity and standing of the bar or to the administration of justice, nor subversive of the public interest. See Rule 218(c)(3)(i) of the Pennsylvania Rules of Disciplinary Enforcement.

## A. COMPETENCY AND LEARNING IN THE LAW

The committee found, and the Office of Disciplinary Counsel does not challenge, that petitioner has the requisite competency and learning in the law to qualify for reinstatement to the practice of law in the Commonwealth of Pennsylvania. As the committee observed:

"The record in this case is replete with evidence, both testimonial and documentary, that the Petitioner applied himself to a continuation of his learning in and study of the law, to an extraordinary degree, during the years of his suspension.

During the period of his suspension, Petitioner:

Earned a Master's Degree at [   ] University Law School, in Labor Law, with an A— average.

Continued his regular reading of the Advance Law and Case reports for State and Federal trial and appellate Courts.

Attended 7 seminars to 1980.

Applied to the Disciplinary Board and was granted relief from the requirement of taking and passing the multi-state examination under Rule

89.276(b)(2)ff. His application for this relief was accompanied by a description of much of the specific efforts carried out by Petitioner on a regular basis for the past 6 years in keeping himself abreast of legal learning and developments.

Continued to purchase and to study legal publications and books. An extensive list of these is contained in his Reinstatement Questionnaire and Answers.

Earned his living largely by performing legal research work for practicing lawyers.

In addition to the objective facts mentioned above is the deeply impressive testimony given by attorneys who testified on Petitioner's behalf. These attorneys testified to Petitioner's reputation in the legal community for having an outstanding informed knowledge of the law, particularly in the tort field, and an outstanding competence in representing his clients. . . ." (Committee's Report, Findings and Recommendation, pp. 15-16).

Accordingly, the committee concluded, and this board unanimously concurs, that petitioner has proved, by clear and convincing evidence, "that he possesses the competency and learning in the law required to practice law in the Commonwealth of Pennsylvania. . . ." And, as has been previously mentioned, the Office of Disciplinary Counsel does not challenge such a finding.

## B. MORAL QUALIFICATIONS

The Office of Disciplinary Counsel does take issue with the moral qualification of petitioner on several grounds[1] and, accordingly, contends that

---

1. Office of Disciplinary Counsel contends that petitioner has failed to demonstrate his moral qualifications in:

(i) failing to acknowledge his transgression of the Code of

petitioner has, therefore, failed to satisfy that prerequisite to reinstatement to the practice of law in this Commonwealth. Hearing committee [ ] rejected such contention of the Office of Disciplinary Counsel as to petitioner's failure to demonstrate his moral qualifications to justify his reinstatement to the practice of law in this Commonwealth and made the following observations and findings of fact in that connection:

". . . 'Moral Qualifications' of the Petitioner. The Hearing Committee has carefully evaluated both the events, and the verbalizations presented in evidence, which bear upon the Petitioner's moral qualifications.

During the 6 years following his suspension, the Petitioner has applied himself diligently to pursuits closely tied to the study of, and learning in, the law. While bearing upon his competency and learning the law, Petitioner's dedication to this study also is a positive reflection upon his moral qualifications.

From the testimony presented, it appears that Petitioner led an exemplary home life, that he has acted as a good husband and father. This again reflects positively on Petitioner's moral qualifications.

He has volunteered substantial parts of his time to community improvement organizations and work, on an unpaid basis.

He has sought professional help to lead him to an

Professional Responsibility by refusing to acknowledge his professional misconduct and improprieties;

(ii) failing to make restitution of the amounts of insurance monies collected because of the inflated claims that were submitted; and

(iii) failing to comply with the various notice requirements of Rule 217 of the Pennsylvania Rules of Disciplinary Enforcement upon his suspension from the practice of law.

understanding of the weaknesses in his personality and character which produced the censurable actions leading to his suspension. The self-examination involved in this search to better know himself, for the purposes of improving himself, is a positive reflection on his moral qualifications.

It is the belief of this Committee that the Petitioner now has the understanding of these flaws of character, and he has the incentive and commitment necessary to avoid any repetition of these culpable acts; he now sees them as destructive of the dearest things in life to him: his family and home, his legal career, his love of working in the law as a lawyer.

Upon the basis of all of the evidence, and after careful weighing of the points brought out by the Disciplinary Counsel in cross-examination and briefs, it is the finding of this Committee that petitioner now possesses the moral qualifications to successfully resist any relapse into the actions for which he was suspended, if he is reinstated into the practice of law.

In addition to the objective actual activities of the Petitioner mentioned above, reflecting on his moral qualifications, veteran trial and appellate lawyers of many years standing at the Bar of Philadelphia testified to his good moral character, including: [A], [B], [C], [D] and [E]. These lawyers testified that they knew Petitioner for many years, both in the professional milieu, and some, socially.

The testimony of each was distinct in that each had his own frame of contact with Petitioner: one as an opponent, one as counsel on the same side, another as a fellow trial lawyer, and so forth: however, the unanimous consensus emerging from these diverse contacts is that each testified to the reputation of Petitioner as being honest, a man of

good morality and integrity, and above all, as being a man dedicated in his love for the law, and dedicated to learning in the law.

The Hearing Committee therefore finds, based upon the unanimous testimony, that the Petitioner has proved by clear and convincing evidence, that he possesses the good moral qualifications required for admission to practice law in this Commonwealth, and the resumption of practice of law therein. . . ." (Committee's Report, Findings and Recommendation, pp. 13-15.)

In light of the foregoing, this board adopts the following findings of hearing committee [　], fully and unequivocably, and finds that the record in this proceeding demonstrates, without meaningful contradiction[2] that petitioner does in fact possess

---

2. This board finds, contrary to the contentions and assertions of the Office of Disciplinary Counsel, that:

(i) Petitioner has acknowledged and admitted his guilt of all charges of professional improprieties and misconduct which resulted in his five-year suspension from the practice of law;

(ii) Petitioner has, in fact, acknowledged a willingness to make restitution of whatever monies were obtained as a result of the submission of inflated medical bills, but none of the insurance companies involved have ever requested such repayments, nor has petitioner ever been requested or directed to make any such restitution, either at the time of his suspension or as a condition thereof, or as a prerequisite to his reinstatement to the practice of law in this Commonwealth; and

(iii) Petitioner has substantially complied with the provisions of Rule 217 of the Pennsylvania Rules of Disciplinary Enforcement relating to "formerly admitted attorneys"; his failure to notify perhaps 6 of 7 of some 500 clients of his suspension from the practice of law was, at worst, a *de minimis* failure, which, in any event, can never be cured, at this late date; that, in an of itself, should not create a *permanent* bar *forever* to Petitioner's Reinstatement to the practice of law in this Commonwealth, and this board so concludes.

the prerequisite moral qualifications for reinstatement to the practice of law in the Commonwealth of Pennsylvania.

## III. FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Disciplinary Board of the Supreme Court of Pennsylvania adopts the following findings of hearing committee [ ] as its findings of fact and conclusions of law in this reinstatement proceeding:

1. Petitioner was suspended from the practice of law by the order of the Supreme Court of Pennsylvania, dated December 27, 1972, which order made petitioner's suspension effective as of January 1, 1975.

2. Petitioner duly applied for reinstatement to the practice of law in the Commonwealth of Pennsylvania on or about July 11, 1981.

3. Petitioner has proved compliance with Rule 217, and he, therefore, has met the condition precedent to petition for reinstatement.

4. Petitioner has carried the burden and has proved by clear and convincing evidence that he has the moral qualifications and competency and learning in the law required for admission to practice law in this Commonwealth and that the resumption of the practice of law in this Commonwealth by petitioner will be neither detrimental to the integrity and standing of the Bar or the administration of justice nor subversive of the public interest.

## IV. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania respectfully recommends to the Supreme Court of Pennsylvania that the instant peti-

tion for reinstatement of [Petitioner] to the practice of law in the Commonwealth of Pennsylvania be granted by your honorable court, and that the court direct that all necessary expenses incurred by this board in the investigation and processing of the instant petition for reinstatement be borne by and paid for by said petitioner. (A statement for such expenses is appended to the instant report).

## ORDER

O'BRIEN, *C.J.*, And now, October 15, 1982, the recommendation of the Disciplinary Board dated September 15, 1982, is accepted and the petition for reinstatement is granted.

The expenses incurred by the board in the investigation and processing of the petition for reinstatement shall be paid by petitioner.